# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re K.B.*, 2012 IL App (3d) 110655

---

| | |
|---|---|
| Appellate Court Caption | *In re* K.B., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Robin B., Respondent-Appellant). |
| District & No. | Third District<br>Docket No. 3-11-0655 |
| Filed | July 19, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a juvenile case, the record supported orders finding respondent mother dispositionally unfit and her daughter neglected due to an injurious environment based on the mother's decision to leave her daughter with a registered sex offender while she served a 180-day sentence for retail theft. |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 11-JA-102; the Hon. Mark E. Gilles, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Louis P. Milot, of Peoria, for appellant.

Jerry Brady, State's Attorney, of Peoria (Terry A. Mertel and Richard T. Leonard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.


Panel

JUSTICE WRIGHT delivered the judgment of the court, with opinion.

Justices Carter and McDade concurred in the judgment and opinion.

**OPINION**

¶ 1    Mother, Robin B., appeals from the trial court's orders finding the minor, K.B., was neglected due to an injurious environment and that mother was dispositionally unfit. We affirm.

¶ 2                                    FACTS

¶ 3    On April 21, 2011, when K.B. was 16 years old, the State filed a petition alleging K.B. was neglected by way of an injurious environment. Specifically, the State alleged mother entrusted K.B., a female, to the care of her live-in paramour named Jay C. Brown, a registered sex offender, while mother served a 180-day sentence in the McLean County jail. Mother also had an ongoing case with the Department of Children and Family Services (DCFS) for allowing a physically abusive former paramour to supervise her children. In addition, mother was arrested in October 2010 in McLean County for retail theft, and she had other previous criminal convictions. Mother married Brown on February 25, 2011, but she did not inform DCFS of this marriage.

¶ 4    While mother's criminal case was pending in McLean County, mother and her caseworker, Cheryl Lawson, discussed the living arrangements for the children if mother was incarcerated. Mother's neighbor was discussed as a potential caregiver, but this arrangement was not "written in stone."

¶ 5    On April 18, 2011, the court sentenced mother to serve 180 days in custody for retail theft, and she immediately began serving her sentence. When mother failed to appear for a meeting with Lawson on April 20, 2011, Lawson arrived at mother's home on April 21, 2011, and found K.B. in the care of Brown. Lawson took protective custody of K.B.

¶ 6    The adjudicatory hearing took place on October 3, 2011, and began with the State introducing a certified copy of Brown's conviction for aggravated criminal sexual abuse (720 ILCS 5/12-16(d) (West 2006)) for knowingly committing a sexual act with a female victim at least 13 years of age but under the age of 17. The State also submitted reports

-2-

demonstrating DCFS charged mother in both 2007 and 2010 for substantial risk of physical injury to her children.

¶ 7     The State's first witness, Karla Allen, a child protection service worker for DCFS, testified that mother offered K.B. the option to stay with either Brown or her neighbor, who also had an open case with DCFS, while she was in jail. Allen stated that because mother had an open case with DCFS, she was required to inform the agency of K.B.'s living arrangements. She also testified that in February 2011, mother lied about her relationship with Brown by claiming they were not together. Brown did not respond to Allen's request for an interview, but Allen was satisfied that Brown did not engage in any sexual contact with K.B.

¶ 8     Lawson, a caseworker for Children's Home Association of Illinois (Children's Home), testified that she was the assigned caseworker for mother, who had other children ranging in age from 9 to 17, including K.B. According to Lawson, after mother's arrest for the 2010 retail theft, the other children moved to Maine to reside with their maternal grandmother. However, K.B. was on probation in Tazewell County and did not to move to Maine with her siblings.

¶ 9     Mother testified at the hearing. She admitted she knew Brown was a registered sex offender. She claimed Brown had successfully completed his probation for the sex offense before their marriage on February 25, 2011.

¶ 10    The trial court found that K.B. was neglected because mother, upon her incarceration, allowed K.B. to decide on a "day-to-day basis" whether she wanted to live with Brown, a registered sex offender, or mother's neighbor, who also had an open case with DCFS. While the court concluded Brown had not engaged in any inappropriate contact with K.B., the court found mother arranged for K.B.'s care in a "hush-hush suspect manner."

¶ 11    The dispositional hearing took place on September 12, 2011. Children's Home prepared a dispositional report which documented that mother's caseworker explained to mother that K.B. would possibly not be returned to her as long as Brown continued to reside in the same home. Mother reported to the caseworker that Brown had completed his sex offender treatment, and the caseworker requested documentation of this assertion. However, she did not receive the documentation from mother, and she could not recommend that mother be found fit without this requested documentation from Brown.

¶ 12    At the dispositional hearing, the trial court found mother unfit, ordered that there be no unsupervised contact between Brown and K.B., and ordered mother to complete parenting classes. Mother now appeals.


¶ 13                                ANALYSIS

¶ 14    Mother's first argument on appeal is that the trial court erred by finding that K.B. was neglected. In this case, mother argues that the trial court relied solely on Brown's status as a convicted sex offender to find that the minor was neglected. We disagree.

¶ 15    The trial court's determination will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re Arthur H.*, 212 Ill. 2d 441, 464 (2004). A

determination will be found to be against the manifest weight of the evidence only if the opposite conclusion is clearly evident or the determination is unreasonable, arbitrary, or not based on the evidence presented. *In re D.F.*, 201 Ill. 2d 476, 498 (2002).

¶ 16    The State must prove an allegation of neglect by a preponderance of the evidence. *Arthur H.*, 212 Ill. 2d at 463-64. Neglect is defined as "the failure to exercise the care that circumstances justly demand and encompasses both willful and unintentional disregard of parental duty." *In re M.W.*, 386 Ill. App. 3d 186, 197 (2008). A minor is neglected if her environment is injurious to her welfare. *Id.* An injurious environment "is an amorphous concept that cannot be defined with particularity but has been interpreted to include the breach of a parent's duty to ensure a safe and nurturing shelter for his or her children." *Id.*

¶ 17    The mere fact that an individual has been convicted of a sex offense against a minor, without more, is insufficient to create an injurious environment as a matter of law. *In re T.B.*, 324 Ill. App. 3d 506, 508 (2001). However, if a respondent allows a sex offender to watch over her children without supervision, a *prima facie* case of neglect is established. *Id.*; *In re David D.*, 202 Ill. App. 3d 1090, 1093 (1990); but see *In re L.M.*, 319 Ill. App. 3d 865 (2001) (State did not meet its burden to prove neglect where sole basis of neglect petition was that mother left minor with father, who was convicted for a sex offense against mother). The respondent then has the opportunity to present evidence that the minor was not at risk while in the sex offender's care. See *T.B.*, 324 Ill. App. 3d at 508-09.

¶ 18    In this case, it was undisputed that mother left the minor to be supervised by Brown, who had been convicted of a sex offense against a minor, which established a *prima facie* case of neglect. In rebuttal, mother produced little evidence concerning the underlying circumstances leading to Brown's conviction for this offense or the outcome of his subsequent court-ordered sex offender treatment. In addition, Brown failed to cooperate with DCFS's request for an interview after mother began serving her sentence for retail theft.

¶ 19    In addition, Allen also testified that mother provided untruthful information about her relationship with Brown, and she did not advise DCFS of their marriage. Allen informed the court that it was important for mother to be forthcoming about who resided in the home with mother because of the open intact-family case with Children's Home.

¶ 20    Moreover, mother did not offer any evidence during the adjudicatory hearing documenting that Brown successfully completed his sex offender treatment. Brown did not testify during the hearing before the trial court. Based on this lack of evidence that Brown did not pose any threat to K.B., we conclude mother failed to rebut the State's *prima facie* case of neglect. Accordingly, the trial court's determination that K.B. was neglected was not erroneous.

¶ 21                              Dispositional Hearing

¶ 22    Mother also challenges the court's finding of dispositional unfitness. During a dispositional hearing, the State must prove parental unfitness for dispositional purposes pursuant to section 2-27 of the Juvenile Court Act of 1987 (705 ILCS 405/2-27 (West 2010)) by a preponderance of the evidence. *In re April C.*, 326 Ill. App. 3d 225, 238 (2001) (citing *In re Lakita B.*, 297 Ill. App. 3d 985, 994 (1998)).

¶ 23    A trial court's determination regarding dispositional unfitness will be reversed "only if the findings of fact are against the manifest weight of the evidence or if the trial court committed an abuse of discretion by selecting an inappropriate dispositional order." *In re T.B.*, 215 Ill. App. 3d 1059, 1062 (1991) (citing *In re Jackson*, 81 Ill. App. 3d 136 (1980), and *In re Nitz*, 76 Ill. App. 3d 15 (1979)). A reviewing court will not overturn a trial court's findings merely because the reviewing court would have reached a different result. *In re T.B.*, 215 Ill. App. 3d at 1062.

¶ 24    In the instant case, mother was being supervised by DCFS for previous allegations of neglect. Despite her caseworker's ongoing involvement, mother was dishonest about the nature of her relationship with Brown and less than forthcoming about the arrangements she made for K.B.'s care during her incarceration. Moreover, mother allowed K.B. to choose between two households during her incarceration. In one household, K.B. was supervised by a convicted sex offender. In the other household, K.B. would have been supervised by another adult who had an open case with DCFS. Neither option ensured K.B.'s safety and guaranteed freedom from ongoing neglectful caregivers. In spite of having a supportive caseworker, mother did not provide a suitable plan for substitute care during her incarceration. Based on these circumstances, we conclude the trial court's finding that mother was dispositionally unfit was well supported by the record in this case.

¶ 25                                      CONCLUSION

¶ 26    For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

¶ 27    Affirmed.