# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

### *In re A.T.*, 2015 IL App (3d) 140372

</div>

| | |
|---|---|
| Appellate Court Caption | *In re* A.T., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Mariah S., Respondent-Appellant). |
| District & No. | Third District<br>Docket No. 3-14-0372 |
| Filed | January 13, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's finding that respondent was dispositionally unfit to care for her child was affirmed on appeal, since the finding was not against the manifest weight of the evidence, especially when she had homicidal ideations with respect to her son, she had a history of substance abuse, domestic violence with the child's father, and criminal convictions, she was homeless and unemployed, and she was not taking her medications. |
| Decision Under Review | Appeal from the Circuit Court of Tazewell County, No. 13-JA-72; the Hon. Richard D. McCoy, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal          Dale R. Thomas, of Pekin, for appellant.

Stewart Umholtz, State's Attorney, of Pekin (Richard T. Leonard, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel          PRESIDING JUSTICE McDADE delivered the judgment of the court, with opinion.
Justices O'Brien and Wright concurred in the judgment and opinion.

**OPINION**

¶ 1    The State filed a neglect petition on behalf of A.T. alleging A.T's mother, Mariah S. (respondent), provided an environment injurious to the minor's welfare. After a finding of neglect and a dispositional hearing, the court found respondent unfit to care for A.T. Respondent appeals the trial court's finding of her dispositional unfitness. We affirm.

¶ 2                                    FACTS

¶ 3    On September 26, 2013, the State filed a neglect petition alleging respondent: (1) suffered from major depression disorder and social anxiety disorder, (2) heard voices telling her to hurt herself, (3) was located on a bridge on September 8, 2013, and told police she was thinking of jumping and had been trying to commit suicide for a week, (4) told police she would rather drown A.T. than have him in the care of the Department of Children and Family Services (DCFS), (5) became homeless sometime after August 27, 2013, and (6) has a criminal history, including a 2011 conviction for aggravated battery, a 2012 conviction for aggravated battery, and a 2012 conviction for forgery.

¶ 4    Respondent filed an answer denying she currently suffered from any mental health problems. She also denied hearing voices. Respondent admitted to the incident on the bridge, having mental health problems in the past, making the statement regarding drowning A.T., being homeless and her criminal history. The trial court found A.T. to be neglected based on these admissions.

¶ 5    The court held a dispositional hearing on April 11, 2014. The court admitted a "Dispositional Hearing/Social History Report" (dispositional report) prepared by a caseworker for Family Core. The dispositional report stated that respondent was homeless and living at the Salvation Army. It also disclosed that respondent had a history of substance abuse and had tested positive for THC on December 30, 2013. Respondent was three months pregnant with her second child at this time. The dispositional report contained the caseworker's opinion that respondent was dispositionally unfit. Attached to the dispositional report were various police reports, mental health records, an integrated assessment and a family service plan.

¶ 6 The dispositional report contained five police reports dated between October 18, 2013 and December 4, 2013. Four of the reports involved instances of domestic violence between respondent and A.T.'s father. The other report concerned a claim that respondent had threatened a female acquaintance.

¶ 7 Respondent's mental health records reveal that she went to the hospital on December 30, 2013, and was admitted because she was having suicidal thoughts and hearing voices. Respondent was diagnosed with major depressive disorder and social anxiety disorder. She was discharged on January 7, 2014. She had previously been hospitalized from September 28, 2013, through October 1, 2013, due to her attempt to jump off the bridge.

¶ 8 The integrated assessment noted that DCFS took protective care of A.T. because respondent made threats to kill A.T. during an argument with A.T.'s father. She had made similar threats a month prior. Respondent was prescribed medication for her mental health issues; however, she is currently not receiving treatment because she no longer has a medical card. Respondent told her caseworker she would be willing to participate in any services that would assist her in having A.T. returned to her.

¶ 9 According to the family service plan, respondent was required to cooperate with her caseworker, participate in a psychological evaluation, consult with a psychiatrist, complete domestic violence treatment, enroll in parenting classes, and obtain employment and stable housing. The psychological evaluation, psychiatric consultation, domestic violence treatment and parenting class tasks were all rated "Satisfactory Progress" by respondent's caseworker. However, this rating was followed by language stating that respondent had not actually undertaken any of these tasks yet because no dispositional order had yet been entered. The stable housing and employment tasks were rated "Unsatisfactory Progress." The caseworker cooperation task was rated, apparently properly, as "Satisfactory Progress."

¶ 10 Upon hearing argument, the trial court found respondent dispositionally unfit. The court adopted all of the recommendations in the dispositional hearing report. Respondent appeals.

¶ 11 ANALYSIS

¶ 12 Respondent's sole argument on appeal is that the trial court erred in finding that she was dispositionally unfit to care for A.T. Upon review, we hold the trial court's unfitness finding was not against the manifest weight of the evidence.

¶ 13 During a dispositional hearing, the State must prove a parent's dispositional unfitness pursuant to section 2-27 of the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/2-27 (West 2012)) by a preponderance of the evidence. *In re K.B.*, 2012 IL App (3d) 110655, ¶ 22. A trial court's determination regarding dispositional unfitness will be reversed " 'only if the findings of fact are against the manifest weight of the evidence or if the trial court committed an abuse of discretion by selecting an inappropriate dispositional order.' "[1] *K.B.*, 2012 IL App (3d) 110655, ¶ 23 (quoting *In re T.B.*, 215 Ill. App. 3d 1059, 1062 (1991)). A trial court's finding is against the manifest weight of the evidence if the record clearly demonstrates that a result opposite to the one reached by the trial court was the proper result. *T.B.*, 215 Ill. App. 3d at 1062.

_____

[1]Respondent does not allege that the trial court selected an inappropriate dispositional order.

¶ 14 In this case, respondent's caseworker opined that respondent was dispositionally unfit. The dispositional report and its attachments support this conclusion. Specifically, they reveal respondent: (1) has homicidal ideations toward A.T., (2) has a history of substance abuse and tested positive for THC while pregnant with her second child, (3) has a history of domestic violence with A.T.'s father, (4) has multiple criminal convictions, (5) is homeless and unemployed, and (6) is not taking her prescribed medication. In light of these facts, we cannot say that the trial court's dispositional unfitness finding is against the manifest weight of the evidence.[2]

¶ 15 In coming to this conclusion, we reject respondent's reliance upon the fact that she received a rating of "Satisfactory Progress" with respect to the psychological evaluation, psychiatric consultation, domestic violence treatment and parenting class tasks. It is clear that respondent was not taking part in any of these tasks and only received this rating due to the lack of a dispositional order at the time. Thus, the rating itself carries no substantive value.[3] In the future, we suggest caseworkers designate more carefully when rating a parent's progress on a particular task. The rating should directly correlate with the actual progress.

¶ 16 Finally, we are troubled by the State's apparent heavy reliance on the labels "depression," "social anxiety" and "mental health problems." A label can encompass a wide spectrum of effects and is not, standing alone, reliably indicative of a person's level of functionality. We hold a diagnosis of depression, anxiety, a personality disorder or even schizophrenia does not automatically render a parent unfit. Rather, it is the actual conduct and behavior of the parent that is determinative on the question of fitness, not the label associated with such conduct or behavior. Consequently, our analysis has intentionally focused solely on the conduct of respondent, not any particular label.

¶ 17 The use of such labels without *directly* linking them to specific conduct or behavior reinforces an unfair and incorrect conclusion that individuals suffering from mental illness cannot successfully parent. We believe the practical effect of this misapprehension is that many mentally ill individuals fail to seek treatment due to the fear of being labeled and stigmatized.

¶ 18 Respondent, in the instant case, exhibited actual conduct that warranted a finding that she was dispositionally unfit. She did seek help on her own (going to the hospital) and she should be commended for making that brave choice. She also voiced a willingness to do whatever is necessary to secure A.T.'s return to her. If she successfully completes her tasks, she may be restored to fitness even while retaining the labels.

¶ 19 The Act "recognizes, both implicitly and explicitly, that it covers people who are failing at their parental responsibilities but who should be given assistance in the development of proper skills and adequate information to provide the non-injurious environment to which their children are statutorily entitled." *In re O.S.*, 364 Ill. App. 3d 628, 635 (2006). It is for these

---

[2]Respondent's alternative argument that the trial court should have found her "unable" rather than "unfit" is not supported by the record.

[3]We do not attribute this delay to respondent. Nonetheless, her progress in the services cannot be "satisfactory," because she has not begun any of them. She was, at the time of the hearing, dispositionally unfit in light of the conduct and behavior described in the dispositional report and its attachments.

reasons, that we hope to see the distinction between labels and actual conduct/behavior more clearly illustrated in future filings with this court and the trial courts of this district.

¶ 20　　　　　For the foregoing reasons, we affirm the trial court's judgment.

¶ 21　　　　　Affirmed.