NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 200048-U

NOS. 4-20-0048, 4-20-0089 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 16, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* R.M. and Z.S., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Champaign County |
| Petitioner-Appellee, | ) | No. 19JA59 |
| v.    (No. 4-20-0048) | ) | |
| Shevon M., | ) | |
| Respondent-Appellant). | ) | |
| ---------------------------------------------------------------------- | ) | |
| | ) | No. 19JA59 |
| *In re* Z.S., a Minor | ) | |
| | ) | |
| (The People of the State of Illinois, | ) | |
| Petitioner-Appellee, | ) | |
| v.    (No. 4-20-0089) | ) | Honorable |
| Rodney H., | ) | Adam M. Dill, |
| Respondent-Appellant). | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices DeArmond and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The trial court did not err in finding (1) respondents were dispositionally unfit and (2) it was in the minors' best interests not to be in the custody of either respondent.

¶ 2    On January 15, 2020, the trial court entered a dispositional order, finding Shevon M. unfit and unable to parent R.M. and Z.S. and Rodney H. unfit, unwilling, and unable to parent Z.S.  The court also ruled it was in the minors' best interests to be placed in the custody and guardianship of the Department of Children and Family Services (DCFS or the Department).  Shevon M. and Rodney H. separately appealed.  This court allowed a motion to consolidate the

respondents' respective appeals. Respondents argue the court erred in finding Shevon M. dispositionally unfit and the minors' best interests would be served by not being in Shevon M.'s custody. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On September 30, 2019, the State filed a petition for adjudication of neglect, abuse, or dependency regarding R.M. (born August 20, 2011) and Z.S. (born July 18, 2018). Shevon M. was listed as the mother of both children. Respondent Rodney H. was noted to be the putative father of Z.S. Richard M. was listed as the legal father of R.M. Richard M. is not a party to this appeal. The petition contained two counts alleging the minors were neglected because their environment was injurious to their welfare as a result of their exposure to domestic violence and substance abuse.

¶ 5        A shelter care hearing was held the same day, on September 30, 2019. DCFS investigator Lavonia Cunningham testified this case came to the Department's attention on September 26, 2019. DCFS investigators attempted to contact the family several times in the next two days.

¶ 6        On September 28, 2019, Cunningham eventually made contact with Shevon M. at her residence. Shevon had an aggressive attitude toward Cunningham. When Cunningham explained she was there because of a police report one of Shevon's children was injured during an incident of domestic violence on September 25, Shevon claimed the physical altercation was between her and a man named Tyrone, not Rodney H. Shevon said R.M. grabbed a knife during the incident to try to protect Shevon. Shevon claimed she was trying to get Tyrone out of her house because Rodney was on his way there.

¶ 7        Shevon could not provide Cunningham with any information about Tyrone other

than his first name even though she claimed to have been in a relationship with him for a month. Shevon said Tyrone hit her with a chair. She also said she believed Tyrone called DCFS and made the report about Rodney H. because she had told Tyrone about Rodney's status as a sex offender. Shevon told Cunningham she was upset and intoxicated on September 26 when she told the police Rodney battered her.

¶ 8 Cunningham testified she also spoke with R.M., who said she grabbed the knife because her mother and Rodney were arguing. She denied knowing anyone named Tyrone. Cunningham, with police assistance, took the children into protective custody. The children appeared physically healthy at the time.

¶ 9 Prior to the shelter care hearing, Shevon M. admitted the domestic battery incident was between her and Rodney H. Cunningham testified the police report for the domestic incident on September 25 indicated Shevon had a gash above her eye, which was crusted with blood. She also had large bruising on her abdomen or ribs. Shevon told the police she and Rodney had lived in her apartment for five years and Rodney had been in Urbana every night for the prior month. She also informed the police she knew Rodney was a registered sexual predator and had not registered properly.

¶ 10 Rodney H. testified he was Z.S.'s father. He described Shevon as an excellent mother, had never seen her do anything to harm her children, and believed it was in the minors' best interests to stay with her. On cross-examination, he testified he visited Shevon and the children once or twice a month for a day or two per visit.

¶ 11 The trial court found probable cause to believe the minors were neglected as alleged in the petition. Based on the relevant circumstances, the court ruled it was consistent with the health, safety, and best interests of each of the minors to order temporary custody of the

children be placed with the guardianship administrator of DCFS. The court allowed Shevon M. supervised visitation. Rodney H. was incarcerated at the time of the hearing and received no visitation while incarcerated but supervised visitation was granted after his release.

¶ 12    On December 3, 2019, the trial court held an adjudicatory hearing. Officer Jeremy Hale of the Urbana Police Department testified he was dispatched to 1200 South Vine Street in Urbana for a domestic dispute on May 25, 2019, shortly before noon. When he arrived, Rodney H. was in the hallway outside the apartment leaving the building. Hale spoke with both Rodney H. and Shevon M., who each accused the other of initiating a physical altercation. Hale saw no visible injuries on either of them.

¶ 13    Officer Jennifer Difanis of the Urbana Police Department testified she was dispatched to 1200 South Vine in Urbana on September 26, 2019, at approximately 4 a.m. A man had called asking the police to stand by while he retrieved property from Shevon M.'s apartment. When Difanis arrived at the scene, the man who called was not present. She testified Officer Osric Hayes was with her. They eventually made contact with Shevon, her brother, and his girlfriend inside the apartment. Shevon was intoxicated, upset, angry, and drinking alcohol while talking with Difanis. Shevon had a cut on her left eyebrow and her left eye was crusted with blood. She also had a large lump in the middle of her forehead, blood on her tank top, and dark bruising on the left side of her ribcage.

¶ 14    Shevon said Rodney H. had beaten her with his hands and fists and knocked her to the ground. Difanis also learned Rodney hit Shevon with a chair. Shevon said this happened about eight or nine hours before the police arrived, which would have been during the evening of September 25, 2019. Difanis also learned Rodney was a registered sexual predator. Shevon stated Rodney had been staying with her every night for at least a month.

¶ 15          Shevon told Difanis she and Rodney had been dating for five years and he lived in the apartment with her. Shevon said her children were present when the fight happened and her daughter, R.M., was hit in the head with the bathroom door. R.M. did not have any visible injuries. R.M. told Difanis that Rodney had been hitting her mother with his hands in the kitchen, living room, and bedroom. R.M. said she got a knife to protect her mother.

¶ 16          Officer Osric Hayes of the Urbana Police Department testified he also responded to 1200 South Vine Street on September 26, 2019, at 4 a.m. When he spoke with Shevon M., she informed him she was pregnant and did not want to bother with medical assistance that was on its way to the apartment. Shevon was eventually convinced to go to the hospital. When he and Shevon arrived at the hospital, Rodney H. was in the waiting room. Officer Hayes did not know Rodney at the time. After making eye contact with Hayes, Rodney tried to walk out the back exit of the emergency room before being stopped by security. When Rodney's name was called, Shevon looked up and identified him.

¶ 17          Hayes then spoke with Rodney, who said he and Shevon had gotten into a fight, he left, and then went back to the apartment to get his things and leave for good. Rodney said Shevon hit him several times, including with her cell phone. He claimed not to know how she was injured. However, he said the front door might have hit her when he was walking out. Rodney had a small injury on the back of his head, which he said was from the cell phone. According to Rodney, R.M. was present during the fight, was scared, and grabbed a knife.

¶ 18          Shevon M. testified on her own behalf. With regard to the incident on May 25, 2019, she testified no fight occurred, only an argument. As for the September 25, 2019, incident, she said it started with a verbal altercation. She then threw her electronic tablet at Rodney's cell phone. Rodney jumped up, and Shevon hit him with her cell phone because she thought he was

going to hit her. She was mad because Rodney was trying to leave. She wanted him to spend more time with her and the kids. She testified he did hit her on the side of the head after she hit him several times. When Rodney opened the door to leave, it hit her on the left eye, and she fell to the ground. When asked why she was being so aggressive toward Rodney, Shevon testified she did not want him to leave her and the kids and go to Dixmoor. She said Rodney would only stay for a day or two per visit. She became angry when he left because she and the kids had no other family in Urbana. Shevon stated she and Rodney had been together, off and on, for five years. She knew Rodney was a registered sex offender the entire time they were dating.

¶ 19      The adjudicatory hearing resumed on December 16, 2019. In issuing its ruling and discussing the evidence presented, the trial court stated:

> "Now, the truth is, and we all know the truth is that [Shevon M.] was struck and had her eye cut and that she was fighting back and there was a mutual domestic going on between [Shevon and Rodney H.] And [R.M.] heard it, got scared, and came out with—and grabbed a knife to try to defend her mom or [Rodney H.] or just do something to try to change this terrible thing that was happening to her and scaring her. That's what happened."

The court found the State had proven both allegations in the petition by a preponderance of the evidence and by clear and convincing evidence. The court noted this was clearly an environment of domestic violence and substance abuse. Although noting the parties were not at the dispositional stage of proceedings, the court stated it "was extremely struck by the lack of insight by [Shevon M.] about the level of domestic violence here."

¶ 20      DCFS filed a dispositional report, incorrectly titled a permanency hearing report, on January 8, 2020. The report noted Shevon M. completed a domestic violence screen on

October 11, 2019, and minimized her domestic violence incidents prior to DCFS's involvement. The report also stated she had completed a mental health assessment but the caseworker had not received a hard copy of the assessment. DCFS recommended custody and guardianship of both children be placed with DCFS.

¶ 21 At a dispositional hearing on January 15, 2020, the trial court noted the dispositional report had been filed with the court on January 8, 2020. The State noted Rodney H. pled guilty on January 9, 2020, to committing aggravated battery against Shevon M. based on the September 25, 2019, incident and was placed on 12 months' probation. The parties stipulated the testimony of the creator of the report and plan would be substantially as indicated in the report. The State and the minors' guardian *ad litem* (G.A.L.) argued it was in the minors' best interests to be made wards of the court and placed in the custody and guardianship of the Department. The G.A.L. stated:

> "The respondent mother has been cooperative with the process thus far. But I believe that given the circumstances, that were very serious, that brought this case into court, it appears that she is at least at this point minimizing the substance abuse and domestic violence that was present within this household."

The G.A.L. did note Shevon M. appeared to be receptive to services and heading on the right track to address her issues, but Rodney H. had been uncooperative so far, pled guilty to the aggravated battery charge stemming from the September 25 incident, and was a registered sex offender.

¶ 22 Rodney H. agreed he was currently unable to have custody of Z.S. His attorney asked the court to find he was unable to have custody and guardianship of Z.S. and set a permanency goal of return home. Rodney H. asked the court to allow Shevon M. to have custody

- 7 -

of the children.

¶ 23        Shevon M.'s attorney recognized Shevon had issues to address but argued she was addressing them, being fully cooperative, had completed some recommended tasks, and was learning. According to Shevon's attorney, Shevon was fit, able, and willing to exercise custody in this case. Alternatively, Shevon's attorney argued DCFS could be given guardianship and Shevon M. keep custody.

¶ 24        The trial court found it was in the minors' best interests to be made wards of the court. The court ruled Rodney H. was unfit, unable, and unwilling, for reasons other than financial circumstances alone, to care for, protect, train, or discipline Z.S., and found it was in Z.S.'s best interests not to be in Rodney's custody. As for Shevon M., the court noted it certainly agreed the Department should have guardianship over the children. As for Shevon having custody, the court noted Shevon had dealt with some very significant mental health issues in the past and issues involving domestic violence. The court noted Shevon was making very good progress but was not at the point where it was in the best interests of R.M. and Z.S. to be in Shevon M.'s custody. The court found Shevon was unfit and unable for reasons other than financial circumstances alone to care for, protect, train, or discipline R.M. and Z.S. The court incorporated its earlier oral and written findings made at prior hearings in this case.

¶ 25        This appeal followed.

¶ 26                                II. ANALYSIS

¶ 27        The Juvenile Court Act of 1987 provides a two-step process for determining whether a child should be removed from parental custody and made a ward of the court. *In re A.P.*, 2012 IL 113875, ¶ 18, 981 N.E.2d 336. As an initial matter, the trial court must conduct an adjudicatory hearing to determine whether the child is abused, neglected, or dependent. *A.P.*,

- 8 -

2012 IL 113875, ¶ 19.  If the court determines a minor is neglected, abused, or dependent, the court holds a dispositional hearing and must first determine whether it is in the best interests of the minor and the public that the minor be made a ward of the court.  *In re M.M.*, 2016 IL 119932, ¶ 17, 72 N.E.3d 260.

¶ 28        The trial court must then determine (1) whether the parent is unfit, unable, or unwilling to care for the minor and (2) whether the best interests of the minor will be jeopardized if he or she remains in the custody of his or her parents.  *M.M.*, 2016 IL 119932, ¶ 21.  The State must prove dispositional unfitness by a preponderance of the evidence.  *In re K.B.*, 2012 IL App (3d) 110655, ¶ 22, 973 N.E.2d 470.  In making its decision, the court "should consider all reports, whether or not the author testifies, which would assist the court in determining the proper disposition for the minor."  *In re L.M.*, 189 Ill. App. 3d 392, 400, 545 N.E.2d 319, 325 (1989).

¶ 29        On December 16, 2019, the trial court entered an adjudicatory order, finding R.M. and Z.S. were neglected because they were in an environment injurious to their welfare.  The court also found the neglect was caused by Shevon M. and Rodney H.  The court found the allegations of the State's petition were proved by both a preponderance of the evidence and clear and convincing evidence.  Neither Shevon nor Rodney challenges the court's adjudicatory findings.  As a result, we turn to the court's dispositional findings and ruling.

¶ 30        After a dispositional hearing on January 15, 2020, the trial court found Rodney H. was unfit, unable, and unwilling, for reasons other than financial circumstances alone, to care for, protect, train, or discipline Z.S.  The court also found it was in Z.S.'s best interest for Rodney H. not to have custody.  Rodney H. does not argue the court erred in doing so.

¶ 31        The trial court also found Shevon M. unfit and unable, for reasons other than

- 9 -

financial circumstances alone, to care for, protect, train, or discipline R.M. and Z.S. The court found Shevon M. had "significant mental health issues that need to be addressed," and she needed "substantial counseling for her many past traumas and incidents of domestic violence." Finally, the court noted Shevon M. "appears to still possess little to no insight [into] the devastating effect her lifestyle has on her children." The court then found it was in the best interests of both minors for Shevon M. not to have custody.

¶ 32    Both Shevon M. and Rodney H. argue the trial court erred in finding Shevon M. unfit and not allowing Shevon to retain custody of the children. They ask this court to (1) reverse the trial court's January 15, 2020, dispositional order to the extent it removes R.M. and Z.S. from Shevon M.'s custody and (2) remand this case for further proceedings.

¶ 33    A trial court's dispositional decision will only be disturbed if the court's factual findings are against the manifest weight of the evidence or the court abused its discretion by selecting an inappropriate dispositional order. *In re Al. S.*, 2017 IL App (4th) 160737, ¶ 41, 73 N.E.3d 1178. "A court's factual finding is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where its finding is unreasonable, arbitrary, or not based on the evidence presented." *Al. S.*, 2017 IL App (4th) 160737, ¶ 41. "A trial court abuses its discretion when no reasonable person would agree with its decision." *In re M.P.*, 408 Ill. App. 3d 1070, 1073, 945 N.E.2d 1197, 1200 (2011).

¶ 34    Respondents argue the trial court's ruling Shevon M. was unfit was against the manifest weight of the evidence. They take issue with the court finding Shevon had significant mental health issues. While acknowledging she was psychiatrically hospitalized in 2008, respondents argue this did not establish she currently had significant mental health issues. However, this was not the only information before the court. As the State points out in its brief,

the dispositional report indicated Shevon M. had been diagnosed with bipolar disorder in the seventh grade. Further, according to the dispositional report, she stopped taking prescribed psychotropic medication after learning she was pregnant with R.M., who was born in 2011.

¶ 35    Respondents also argue—to the extent Shevon had mental health issues or lacked insight into how her children were affected by her "prior lifestyle"—the evidence before the trial court showed she was fully engaged in her recommended services and "had earned kudos from her service providers." However, the fact Shevon had engaged in some services does not mean the court erred in finding her unfit. *In re An. W.*, 2014 IL App (3d) 130526, ¶ 77, 17 N.E.3d 878. While Shevon had completed a mental health assessment on December 20, 2019, DCFS had not received a hard copy of the results of the assessment when the dispositional report was completed. Further, the dispositional report recommended trauma-informed psychotherapy services prior to reunification.

¶ 36    The trial court also found Shevon M. appeared to possess little insight into the effect her lifestyle was having on her children. She tried to cover for Rodney H. with DCFS caseworkers by blaming her injuries on another man. When Shevon M. reported the September 25, 2019, incident to police, she told the police Rodney H. hit her with his hands, fists, and a chair. She had a large lump on her forehead, dark bruising on the left side of her rib cage, and a cut on her left eyebrow which required four stitches to close. During the incident, R.M. retrieved a knife in an attempt to protect Shevon M. from Rodney. R.M. told both the police and the caseworker it was Rodney H. who hurt Shevon M. At the adjudicatory hearing on December 3, 2019, Shevon M. essentially tried to blame herself for the situation causing her injuries. She said she threw her tablet at Rodney H.'s cell phone and hit Rodney H. on the head with her cell phone. She testified the door hit her in the eye when Rodney H. was trying to leave. The trial

court clearly did not believe her testimony because it stated, "[W]e all know the truth is that she was struck and had her eye cut and that she was fighting back and there was a mutual domestic going on between the two of them."

¶ 37   We do not find the trial court's finding Shevon was unfit is against the manifest weight of the evidence in this case. The court heard evidence Shevon was bipolar and not taking any psychotropic medication for her condition. Further, the trial court found she lied about the September 25 domestic violence incident and had little insight into the effects on her children of domestic violence.

¶ 38   As for respondents' argument the trial court abused its discretion by not placing custody of the children with Shevon, we disagree. According to respondents, Rodney was living in Dixmoor two hours from Shevon's residence in Urbana. However, we note Shevon said Rodney was living in Dixmoor when the domestic incident occurred on September 25, 2019. Regardless, because the trial court in the adjudicatory order found Shevon neglected the children, the trial court could not place the children back into her custody until the court found she was fit. 705 ILCS 405/2-23(1)(a) (West 2018). As a result, the court did not err in placing the minors in the custody and guardianship of DCFS.

¶ 39                               III. CONCLUSION

¶ 40   For the reasons stated, we affirm the trial court's judgment.

¶ 41   Affirmed.