2025 IL App (4th) 250530-U

NOS. 4-25-0530, 4-25-0531, 4-25-0532 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

FILED
October 6, 2025
Carla Bender
4th District Appellate Court, IL

| | |
|---|---|
| *In re* An. C., a Minor | Appeal from the Circuit Court of Adams County No. 24JA68 |
| (The People of the State of Illinois, Petitioner-Appellee, v. (No. 4-25-0530) Sheana P.-G., Respondent-Appellant). | |
| *In re* Ar. C., a Minor | No. 24JA69 |
| (The People of the State of Illinois, Petitioner-Appellee, v. (No. 4-25-0531) Sheana P.-G., Respondent-Appellant). | |
| *In re* Am. C., a Minor | No. 24JA70 |
| (The People of the State of Illinois, Petitioner-Appellee, v. (No. 4-25-0532) Sheana P.-G., Respondent-Appellant). | Honorable John C. Wooleyhan, Judge Presiding |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Doherty and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed the orders adjudicating respondent's children neglected and making them wards of the court, as the trial court's findings were supported by the evidence.

¶ 2    Respondent, Sheana P.-G., appeals orders adjudicating her children, An. C. (born

in 2019), Ar. C. (born in 2020), and Am. C. (born in 2022), neglected and making them wards of the court. Respondent's husband is the father of all three children and is not a party to this appeal. For the following reasons, we affirm.

¶ 3                                                    I. BACKGROUND

¶ 4        On August 20, 2024, the State filed petitions alleging that respondent's children were either abused or neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (705 ILCS 405/2-3(1)(b) (West 2024)). The State later withdrew the allegation implicating abuse and proceeded solely on a neglect theory. The State alleged that (1) the children's father was a registered sex offender who police found at respondent's home rather than at his registered address, (2) there were cannabis plants and material located in respondent's home that were not secured to prevent the children from accessing them, and (3) respondent reported that the children's father threatened her with violence multiple times and damaged her property. Following a shelter care hearing on August 21, 2024, the trial court found there was probable cause for the State's petitions and transferred temporary custody of the children to the Illinois Department of Children and Family Services (DCFS).

¶ 5                                              A. Adjudicatory Hearing

¶ 6        On February 20, 2025, the trial court held an adjudicatory hearing on the State's petitions. The State's evidence showed the following.

¶ 7        The children's father was required to register as a sex offender. On August 15, 2024, Officer James Brown of the Quincy Police Department went to the father's registered address in Quincy, Illinois. One of the father's relatives informed Brown that the father had not lived there "in quite some time." Based on information he received, Brown went to respondent's address in Quincy, where he located respondent and her three children.

¶ 8 Brown determined that respondent had a warrant for her arrest, so he took her into custody. Brown searched respondent's home with her consent and found 80 cannabis plants, most of which were located in the master bedroom inside two zipped grow tents that had no locks on them. Brown found other items associated with a cannabis-growing operation in the master bedroom, including a backpack sprayer, fans, thermometers, timers, crates of chemicals, and a drying plant hanging on the wall. On top of the smaller of the two tents, which Brown estimated was about four or five feet tall, there was loose cannabis material, more chemicals, and a "vape cart." Brown found additional cannabis plants on the floor in the home's laundry room. On some shelving above the washer and dryer, Brown found aluminum foil that contained cannabis material. In the home's kitchen, Brown found 155.2 grams of "finished cannabis" packaged in the freezer. Brown also found cannabis plants on top of the refrigerator and "loose plant material," starter cups, and "blunt material" on the counter. According to Brown, there was nothing preventing the children from gaining access to the home's master bedroom, laundry room, or kitchen.

¶ 9 Respondent told Brown the tents belonged to the children's father, who "had just brought them back from some other girl's house." Respondent related that the children's father slept at her home "off and on," but frequently. Respondent also told Brown there was "ongoing" domestic violence in the home and that the children's father had "struck her" before.

¶ 10 Edward Mason, a DCFS child protection specialist, spoke with respondent at her home on August 19, 2024. Respondent told Mason that the children's father was responsible for growing the cannabis. Although respondent was aware of that operation, she denied participating in it or "using any of the product in the home." Respondent did not give Mason any indication as to how long the cannabis operation had been going on. Respondent reported to Mason being the victim of "multiple incidents of domestic violence," including situations in which the children's

father had damaged her door, punched her television, and struck her. The State introduced into evidence photographs showing damage to respondent's door and television. Respondent denied being the perpetrator of domestic violence. She also denied that the children's father was living in her home, though she said he "stayed there multiple days to watch the children while she was working."

¶ 11    Mason also spoke with the children's father, who denied living at respondent's home. However, the father also related that respondent had "kicked him out of the house on multiple occasions" and then kept his belongings. The father denied assaulting or battering respondent. He told Mason about one incident when respondent had "ripped" one of the children from his arms.

¶ 12    Respondent presented no evidence at the adjudicatory hearing.

¶ 13    The trial court found that the State had proved by a preponderance of the evidence all the allegations in its petitions, other than the allegation of abuse that was withdrawn. Accordingly, the court adjudicated the minors neglected. The court's written adjudicatory order indicates that the children's environment was injurious to their welfare based on "domestic violence between parents" and "cannabis grow operation in home with children present."

¶ 14                    B. Dispositional Hearing

¶ 15    Reports filed in advance of the dispositional hearing showed that respondent was employed through "a travel CNA agency." When caseworkers viewed her home in January 2025, there were no noted safety concerns. Respondent had a medical cannabis card and tested negative for all other substances.

¶ 16    However, reports also showed that respondent failed to cooperate fully with her caseworkers and DCFS staff, taking the position that she did not have to do anything until forced

to do so by the court. For example, respondent did not complete an integrated assessment and refused to sign her service plan. She also did not sign all necessary consents to allow caseworkers to communicate with her service providers until after the adjudicatory hearing. Thus, caseworkers could not always confirm which services respondent was participating in or whether she was making progress. Caseworkers eventually learned that respondent had started domestic violence, mental health, and substance abuse services but was unsuccessfully discharged from a parenting class due to inconsistent attendance.

¶ 17      Caseworkers also had concerns about respondent recording them without authorization. Caseworkers became aware of a report that on April 25, 2025, respondent picked up one of the children and attempted to take him from his foster parent, which resulted in the police being called.

¶ 18      On May 22, 2025, the trial court held the dispositional hearing. The parties elected not to present evidence and rely solely on arguments based on the reports that were submitted. The court ruled that "[b]ased on all of the evidence and information that we have here today," the children would be made wards of the court and DCFS would be appointed as their guardian and custodian. The court set a goal for the minors to return home within 12 months. The court's written dispositional order indicated that respondent was unfit due to "[e]nvironment [n]eglect."

¶ 19      Respondent filed a timely notice of appeal in each child's case. We granted respondent's unopposed motion to consolidate the appeals.

¶ 20                                II. ANALYSIS

¶ 21      On appeal, respondent challenges the sufficiency of the evidence supporting both the adjudicatory and dispositional orders.

¶ 22      The Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2024)) contains a

two-step process for removing a minor from the custody of his or her parents and making the minor a ward of the court. *In re Z.L.*, 2021 IL 126931, ¶ 58. The first step is to hold an adjudicatory hearing to determine whether the minor is abused, neglected, or dependent. 705 ILCS 405/2-18(1) (West 2024); *Z.L.*, 2021 IL 126931, ¶ 59. A court may find a minor neglected even if the parents are not both neglectful. See *Z.L.*, 2021 IL 126931, ¶ 59 (" 'The only question to be resolved at an adjudicatory hearing is whether or not a child is neglected, and not whether every parent is neglectful.' ") (quoting *In re Arthur H.*, 212 Ill. 2d 441, 467 (2004)). The State must prove its allegations by a preponderance of the evidence. *Z.L.*, 2021 IL 126931, ¶ 61.

¶ 23    If the court adjudicates the minor abused, neglected, or dependent, the second step is to hold a dispositional hearing to determine whether the minor should be made a ward of the court. 705 ILCS 405/2-21(2) (West 2024); *Z.L.*, 2021 IL 126931, ¶ 60. In making that determination, the court "may consider the acts and/or omissions of the parents." *Z.L.*, 2021 IL 126931, ¶ 60.

¶ 24    We will reverse a neglect finding only if it is against the manifest weight of the evidence, meaning that "the opposite conclusion is clearly evident." *Z.L.*, 2021 IL 126931, ¶ 61. We will reverse a dispositional order " 'only if the findings of fact are against the manifest weight of the evidence or the court committed an abuse of discretion by selecting an inappropriate dispositional order.' " *In re Al. S.*, 2017 IL App (4th) 160737, ¶ 41 (quoting *In re J.W.*, 386 Ill. App. 3d 847, 856 (2008)).

¶ 25                    A. The Adjudication of Neglect

¶ 26    In challenging the sufficiency of the evidence supporting the adjudication of neglect, respondent maintains the State failed to present any evidence that the children were negatively impacted or endangered by their father's improper sex offender registration, the

presence of cannabis in their home, or domestic disturbances between their parents. According to respondent, the mere fact that the children's father was a registered sex offender did not itself create an injurious environment and the issue regarding the father's registered address had nothing to do with whether he was allowed to contact the children. With respect to the presence of cannabis in the home, respondent submits that (1) the State failed to prove this was any different or more dangerous to the children than growing tomatoes and (2) the children were likely unable to access the cannabis due to their young ages. Respondent further contends that the State failed to prove when domestic violence occurred or whether the children were present.

¶ 27 The State responds that the trial court correctly adjudicated the children neglected. According to the State, evidence that respondent allowed the children's father, a registered sex offender, to watch the children unsupervised created a *prima facie* case of neglect, which respondent did not rebut. The State also disagrees with respondent analogizing cannabis plants to tomato plants, asserting that "[i]t is very well known that any form of cannabis can pose dangers to a child." The State asserts that some of the cannabis in respondent's home, such as the plants on the ground in the laundry room, were accessible to the children and the children were old enough to enter any unsecured room in the home. Finally, the State maintains the evidence showed there was ongoing domestic violence in respondent's home, which meant the children, who were not yet school-aged, were home when it occurred.

¶ 28 We note the State relies on *In re K.B.*, 2012 IL App (3d) 110655, ¶ 17, in support of its contention that a *prima facie* showing of neglect arose because respondent sometimes left her children unsupervised with a registered sex offender while she worked. However, *K.B.* involved a mother who left her 16-year-old daughter in the care of a registered sex offender who evidently was *not* the child's father. See *K.B.*, 2012 IL App (3d) 110655, ¶ 3. Here, by contrast,

- 7 -

the registered sex offender was the children's father, and there was no evidence introduced that he was legally prohibited from being around his children. Moreover, the trial court did not purport to find the children neglected based on a presumption arising from their father being a sex offender. Rather, the adjudicatory order indicates the children were neglected because their environment was injurious to their welfare based on "domestic violence between parents" and a "cannabis grow operation in home with children present."

¶ 29    The term " 'injurious environment' " is "an amorphous concept that cannot be defined with particularity." *Arthur H.*, 212 Ill. 2d at 463. Additionally, neglect cases are "*sui generis*, and must be decided on the basis of their unique circumstances." *Arthur H.*, 212 Ill. 2d at 463. Generally, however, " 'injurious environment' " includes situations where a parent fails to provide his or her children with a safe and nurturing shelter. *Arthur H.*, 212 Ill. 2d at 463. "Evidence that a parent exposed a child to a risk of danger is sufficient, even if the child has not yet been harmed by the danger." *In re K.F.*, 2023 IL App (1st) 220816, ¶ 50.

¶ 30    The evidence showed that respondent's children lived in a home where cannabis was grown illegally and stored haphazardly. There were references in reports submitted to the court that both the children's father and respondent had medical cannabis cards. However, even with a medical cannabis card, there is a five-plant-per-household limit on growing cannabis. 410 ILCS 705/10-5(b)(1) (West 2024). Additionally, any person growing cannabis must "take reasonable precautions to ensure the plants are secure from unauthorized access, including unauthorized access by a person under 21 years of age." 410 ILCS 705/10-5(b)(4) (West 2024). The evidence showed there were 80 cannabis plants in respondent's home, which were located (1) in zipped tents in the master bedroom, (2) on top of the refrigerator, and (3) on the floor in the laundry room. There were also chemicals in bottles in the master bedroom, and there was loose

cannabis in the bedroom, laundry room, and kitchen and cannabis packaged in the freezer. A police officer who observed the home testified there was nothing preventing the children from gaining access to the kitchen, laundry room, or master bedroom.

¶ 31      Respondent argues that her children, based on their ages, would not have been physically capable of accessing the cannabis, particularly when she was supervising them. The evidence does not compel that conclusion. Respondent's oldest child was only two months away from turning five years old when the police and DCFS workers became involved with this case. One would certainly expect a child of that age to be capable of accessing unlocked rooms within the home, opening a freezer, and unzipping a tent. Respondent's other children were two years old and a few months away from four, respectively, so they likewise were mobile. A reasonable factfinder could conclude that the way cannabis was grown and stored in respondent's home posed a danger to the children.

¶ 32      Respondent's analogy of cannabis to tomatoes is unpersuasive, as the legislature treats those items very differently. Unlike tomatoes, individuals under 21 years old are not allowed to possess cannabis (410 ILCS 705/10-15(a) (West 2024)), and authorized adults who grow cannabis must take reasonable precautions to ensure such plants are secure from minors accessing them (410 ILCS 705/10-5(b)(4) (West 2024)). The legislature has declared its intent to regulate cannabis like alcohol (410 ILCS 705/1-5(b) (West 2024)), which unquestionably is a substance that can endanger children.

¶ 33      The presence of domestic violence in the home further supports the trial court's neglect finding. Respondent reported that the children's father would strike her and damage the home. Photographs depicting damage to a television and door corroborated respondent's claim. Although the record does not reflect exactly when these domestic violence incidents occurred,

Brown, who interviewed respondent, testified that respondent "provided an overall statement explaining that there was ongoing domestic violence within the house, that [the children's father] had struck her before." The evidence also showed that the children were not yet school-aged and were supervised either by respondent or their father. Thus, the evidence reasonably supports the conclusion that domestic violence was an ongoing problem in respondent's household and the children would have been in the home when it occurred.

¶ 34       Given the presence of large quantities of accessible cannabis in the children's home and ongoing domestic violence, we hold that the trial court's finding of neglect was not against the manifest weight of the evidence.

¶ 35                              B. The Dispositional Order

¶ 36       Respondent also challenges the dispositional order, in which the trial court found her to be unfit and made the children wards of the court. Respondent maintains that she was not responsible for the issues causing the children's environment to be injurious and that she can provide a safe and stable home for the children. Respondent emphasizes that she is employed, has a clean home, and behaved appropriately toward the children during visits. Although she recognizes the record shows she initially did not cooperate with her caseworkers, she notes she improved after the adjudicatory hearing. Respondent argues that all safety concerns have been alleviated by removing the children's father from the home.

¶ 37       In defending the dispositional order, the State mentions that respondent (1) initially denied needing services, (2) only recently commenced services, and (3) was already discharged from a parenting class for inconsistent attendance. The State also argues that the relevant question is whether the children were neglected, not whether respondent caused the neglect. Nevertheless, the State proposes that respondent was responsible for allowing the children's father to live at her

house and bring cannabis there.

¶ 38       We hold that the trial court's dispositional order was neither against the manifest weight of the evidence nor an abuse of discretion. The evidence showed that respondent allowed the children's father to grow large amounts of cannabis in her home and failed to recognize the need to take any meaningful measures to secure that cannabis from her young children. Respondent's lack of cooperation with caseworkers prevented a comprehensive assessment of whether she can provide a safe environment for the children at this time. Reports also showed that respondent had not yet completed domestic violence services and was discharged from her parenting class due to nonattendance. The court received information that one of the children's foster parents recently called the police on respondent, which likewise does not inspire confidence. Given the totality of the circumstances, the court reasonably determined that respondent was dispositionally unfit and made the children wards of the court, with a goal of returning them home within 12 months.

¶ 39                    III. CONCLUSION

¶ 40       For the reasons stated, we affirm the trial court's judgment.

¶ 41       Affirmed.