**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 200329-U

Order filed March 18, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| *In re* C.S., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| a Minor | ) | Peoria County, Illinois. |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-20-0329 |
| | ) | Circuit No. 19-JA-410 |
| v. | ) | |
| | ) | |
| Pamela S., | ) | Honorable |
| | ) | Timothy J. Cusack, |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE O'BRIEN delivered the judgment of the court.
Justices Holdridge and Schmidt concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The trial court's finding that the mother was dispositionally unfit was affirmed as not against the manifest weight of the evidence.

¶ 2    The respondent mother, Pamela S., appeals the trial court's dispositional order that found that the minor, C.S., was neglected due to an environment injurious to her welfare and found the mother unfit.

¶ 3                                         FACTS

¶ 4    A juvenile petition was filed on November 4, 2019. The petition alleged that C.S. (born December 16, 2008) was neglected due to an environment injurious to her welfare pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/2-3(1)(b) (West 2018)) in that the mother's paramour, who lived with C.S. and the mother, had punched C.S. in the mouth, flipped C.S.'s chair so that C.S. fell on her face, and had sat on C.S.'s stomach and pinned C.S.'s arms to the floor on multiple occasions. The petition alleged that the mother was aware of the incidents but allowed the behavior to continue and did not force the paramour to leave the home. The petition also alleged that the paramour had a mental health history and a criminal history and that C.S. and her mother had lived in four states in the last two years. At the shelter care hearing the next day, the trial court found that there was probable cause to believe that the allegations of the petition were true and placed C.S. in temporary shelter care. C.S. was placed in the temporary custody of the Department of Children and Family Services (DCFS), which placed C.S. in a traditional foster home. At the adjudicatory hearing on March 2, 2020, the State amended the petition to strike allegations that the paramour punched C.S. in the mouth and flipped C.S.'s chair so that C.S. fell on her face, and mother stipulated to the amended petition. C.S. was adjudicated neglected.

¶ 5    The dispositional hearing was held on July 20, 2020. Troy S. testified that he was C.S.'s adoptive father and that he was married to the mother, although divorce proceedings were pending in Iowa. Troy testified that he lived in Iowa and that C.S. and the mother had previously resided

at the same home with him. About a year and a half earlier, he came home one day and both the mother and C.S. were gone. Troy testified that he did not know of C.S.'s whereabouts until he was notified of court proceedings. He was seeking custody of C.S. in the Iowa divorce proceedings.

¶ 6    The mother testified that C.S. would misbehave when she did not have her way and that the mother did not believe that her paramour used excessive force. C.S. had vandalized the mother's truck and the apartment and the police had to be called on previous occasions. According to the mother, the police advised the mother and her paramour to use some force to make C.S. cooperate. The mother testified that she and Troy had placed C.S. in counseling when C.S. first came to live with them in 2016, but the mother thought the counselor was not effective.

¶ 7    The dispositional report prepared by DCFS provided that the mother and Troy had adopted C.S. when she was seven years old, which would have been in approximately 2016. The mother lived in four different states between February and November 2019 (Arizona, New Mexico, Wisconsin, and Illinois) and had moved several more times since DCFS became involved. The mother currently lives with her paramour, and the paramour does not believe her behavior toward C.S. was abusive, behavior which allegedly included punching C.S. in the mouth, tipping C.S.'s chair, throwing a water bottle at C.S., and calling C.S. names, as well as the allegations in the juvenile petition. The mother defends her paramour. Prior to the COVID-19 pandemic, the mother was visiting with C.S. on Sundays, but the mother brought the paramour despite being told not to do so. Many of the assessments for both the mother and her paramour were temporarily delayed due to the pandemic.

¶ 8    The State recommended that the mother be found unfit because she was still living with the paramour who was physically aggressive with C.S. and there were issues with the mother accepting responsibility for the actions that led to the case being opened, including bringing the

paramour to visits with C.S. The State recommended that the father be found fit but that the minor remain a ward of the court pending coordination with child services in Iowa. Troy asked to be named guardian and the case transferred to Iowa.

¶ 9       The trial court found that DCFS had made reasonable efforts and made C.S. a ward of the court. The mother was found to be unfit for the reasons stated in the petition and the dispositional report. The father was found to be fit, but the trial court wanted guardianship to remain with DCFS pending reports from the proceedings in Iowa. The mother appealed the removal of C.S. from her care and the finding of unfitness.[1]

¶ 10                                    ANALYSIS

¶ 11      The mother contends that the trial court erred in finding her unfit. The State contends that the trial court's order finding the mother to be dispositionally unfit was not against the manifest weight of the evidence.

¶ 12      In proceedings under the Act, once a trial court adjudicates a child to be neglected, the court shall hold a dispositional hearing. 705 ILCS 405/2-21(2) (West 2018). At the dispositional hearing, the trial court considers whether "it is consistent with the health, safety and best interests of the minor and the public that [the minor] be made a ward of the court." 705 ILCS 405/2-21(2) (West 2018); *In re N.B.*, 191 Ill. 2d 338, 343 (2000). At this stage, the court also determines whether the parents are unfit or unable to care for the minor. 705 ILCS 405/2-27(1) (West 2018); *In re K.L.S.-P.*, 381 Ill. App. 3d 194, 195 (2008). The State must prove by a preponderance of the evidence a parent's dispositional unfitness pursuant to section 2-27 of the Act. *In re K.B.*, 2012 IL App (3d) 110655, ¶ 22. We will not disturb a trial court's dispositional unfitness finding unless it

---

[1]The father also appealed; his appeal is pending in this court as case No. 3-20-0328.

is against the manifest weight of the evidence, *i.e.*, only if the record clearly demonstrates that the opposite result is warranted. *In re A.T.*, 2015 IL App (3d) 140372, ¶ 13.

¶ 13    The mother contends that the trial court's finding of unfitness was against the manifest weight of the evidence because the mother: was cooperating with DCFS and willing to complete services; attempted to engage in services but was prevented from doing so due to the pandemic; attended scheduled visits; and had previously obtained counseling for C.S. The State argues that, although the mother was cooperative and willing to engage in services, she did not have the ability to properly parent C.S. The mother understood that C.S. would benefit from counseling, but does not appear to have taken her to any counseling after 2016 and allowed her paramour to use physical violence and restraint against C.S. The mother continued to reside with the paramour. Also, the mother's mental health issues impacted her ability to parent.

¶ 14    We find that the trial court's conclusion at the dispositional stage of the proceedings that the mother was unfit was not against the manifest weight of the evidence. The trial court based its decision on the amended petition, which the mother stipulated to, and the dispositional report. The dispositional report contained the additional allegations that had been stricken from the original juvenile petition—that the paramour punched C.S. in the mouth and tipped C.S.'s chair—and further noted that the paramour thought that those actions, along with pinning C.S. to the floor, were appropriate because C.S., who was 11 years old, was disrespectful. The dispositional report also stated that the paramour had admitted to throwing a water bottle at C.S., belittling C.S., calling C.S. names such as "little bitch," and breaking C.S.'s belongings. The mother continued to support the paramour's actions, including bringing the paramour to visits with C.S. even when asked not to. In light of that evidence, the mother's cooperation with DCFS and willingness to engage in services, albeit impacted by the pandemic, do not persuade us that the trial court's finding of

5

unfitness was against the manifest weight of the evidence. See *In re April C.*, 326 Ill. App. 3d 225, 240 (2001) (standard for finding a parent dispositionally unfit is a preponderance of the evidence, less than the clear and convincing evidence required for a finding of unfitness in termination of parental rights proceedings under section 1(D)(m) of the Adoption Act (750 ILCS 50/1(D)(m) (West 2018)).

¶ 15                                                                 CONCLUSION

¶ 16        The judgment of the circuit court of Peoria County finding the mother to be unfit is affirmed.

¶ 17        Affirmed.